# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

LAURA J. FLAM,

      **Plaintiff**

      **v.**

MARSHALL S. FLAM, M.D.,

      **Defendant**

**CASE NO. 1:12-CV-1052 AWI DLB**

**ORDER ON PLAINTIFF'S MOTION TO REMAND AND ORDER REINSTATING MOTION TO DISMISS**

(Doc. Nos. 8, 18)

     This removed case involves a dispute between former spouses regarding funds in a retirement account.  Now before the Court, following a remand from the Ninth Circuit, is Plaintiff's motion to remand back to the Fresno County Superior Court.  For the reasons that follow, Plaintiff's motion will be denied.


## BACKGROUND

     On January 26, 2001, the Fresno County Superior Court issued a judgment of dissolution of marriage ("Dissolution") between Plaintiff and Defendant.  See Defendant's Request for Judicial Notice ("RJN") Ex. A.  On August 5, 2001, the Fresno County Superior Court issued a Qualified Domestic Relations Order ("QDRO").  See RJN Ex. B.  These orders computed and documented Plaintiff's and Defendant's respective community and separate property interests in a retirement, pension, and/or profit sharing plan known as the "Hematology-Oncology Medical Group of Fresno, Inc." ("the Plan").  Pursuant to the Dissolution and QDRO, Defendant

established segregated accounts within the Plan for the separate interests of himself and Plaintiff.[1] See Doc. No. 1 Ex. A at p.1 ¶ 3.  The separate interests of Plaintiff and Defendant in the Plan were maintained by InTrust (an entity that was later renamed Millennium Trust Company, LLC ("Millennium")).  See id.  Once the accounts in the Plan were segregated between Plaintiff and Defendant, Plaintiff was informed of the segregation but elected not to take any action to move her segregated account from the Plan.  See id. at ¶ 5; June 2012 Dec. of Plaintiff at ¶ 2.  Plaintiff never received any account statements or accountings while the funds were at Millennium.  See Doc. No. 1 Ex. A at p.1 ¶ 4; June 2012 Dec. of Plaintiff at ¶ 3.

In 2004, Defendant transferred all of his segregated account in the Plan from Millennium to an account at Morgan Stanley.  Plaintiff's account remained at Millennium.

In 2007, and without notice to Plaintiff, Defendant liquidated and closed Plaintiff's account in the Plan at Millennium, and transferred the money to a Morgan Stanley account.  The amount of the transfer was $431,822.59.  The name on the Morgan Stanley account was "Marshal S. Flam, Trustee Hematology Oncology Medical Group of Fresno, Inc. Employee Pension Plan fbo MS Flam."  Plaintiff had no knowledge of the liquidation of her Plan account at Millennium or Defendant's reinvestment of her funds with Morgan Stanley in 2007.

In January 2010, Plaintiff began to make efforts to learn the status of her Plan account at Millennium.  In November 2011, Plaintiff filed a Summons and Order to Show Cause Complaint ("November OSC") in the Fresno County Superior Court.  See Ryden Dec. Ex. A.  The November OSC was filed under the 2001 divorce case.  See id.  The November OSC sought an order for Defendant to segregate and distribute Plaintiff's Plan account funds, provide an accounting, and pay reasonable fees.  See id.

In a February 2012 deposition of Defendant, Plaintiff learned about Defendant's 2007 liquidation and transfer of her Plan account from Millennium to Morgan Stanley.  Near the time of the deposition, the Morgan Stanley account had a value of $280,658.78.

On May 24, 2012, Defendant filed a response to the November OSC.  See Ryden Dec. Ex.

---

[1] In Part, the QDRO stated, "As soon as administratively feasible after the date that this order is determined by the plan to be qualified, [Plaintiff's] share shall be transferred to one or more separate accounts in the Plan in the name of [Plaintiff]."

B. Defendant responded that he had already completed all steps necessary to segregate Plaintiff's interest in the Plan, that he had voluntarily provided an accounting of the Plaintiff's Plan funds, that no attorney's fees should be awarded against him because the situation was caused by Plaintiff, and that Plaintiff should be ordered to perform all acts necessary to complete the transfer of accounts into her name pursuant to the Dissolution and QDRO.  See id.

On June 8, 2012, Plaintiff filed another Summons and Order to Show Cause Complaint ("OSCC") in the Fresno County Superior Court, again as part of the 2001 divorce case.  See Doc. No. 1 at Ex. A.  The OSCC sought damages of $151,253.81 against Defendant under Family Code § 1101(g) for "breach of fiduciary duty to [Plaintiff] in the management and control of [Plaintiff's] pension account in the [Plan]."  Id. at Bates pp. 4-5.  The OSCC alleged that Defendant liquidated her Millennium account, transferred the proceeds to Morgan Stanley, and that Morgan Stanley engaged in multiple transfers/transactions, without her consent or knowledge.  See id. at Bates pp. 6-7.  The OSCC alleged that from 2001 through January 2012, Plaintiff received no statements regarding either her Millennium account or the Morgan Stanley account, despite the statements going to Defendant's office and Defendant having Plaintiff's address.  See id.  The OSCC alleged that Defendant was a continuing trustee who had an on-going duty to send Plaintiff statements so that she could track the status and location of her account.  See id. at Bates p. 12.  The OSCC averred that Defendant had an on-going fiduciary duty to Plaintiff under Family Code § 721, which included the duty to provide Plaintiff, without demand, information about the account that was reasonably required for Plaintiff to exercise her rights in the account.  See id. at Bates pp. 14-15.  The OSCC states that Plaintiff's claim "is not dependent on a finding that [Defendant] mismanaged her money," and that trustees have a duty to keep beneficiaries reasonably informed of the trust and its administration and to communicate material facts affecting the beneficiary's interest.  Id. at Bates pp. 16-17.  The OSCC alleges that Defendant had a statutory fiduciary duty to at least periodically provide statements to Plaintiff so that she would know what was going on with her account.  See id. at Bates p.18.  The OSCC explains that when Defendant deposited Plaintiff's liquidated account funds with Morgan Stanley, Defendant deprived Plaintiff of her ability to know where her money was, and she had no participation in investment decisions.  See

3

1   id.  The OSCC explains that "exactly why [Plaintiff's] account sustained the loss that it did is not

2   the issue here," because once Defendant "took it upon himself to exert management and control of

3   assets that had already been awarded to Petitioner, treating them as his own without any notice or

4   accounting to [Plaintiff], he became responsible for whatever ensued."  Id. at Bates p.19.  The

5   $151,253.81 that Plaintiff sought to recover was the difference between the value of the

6   Millennium account when it was transferred to Morgan Stanley in 2007, and the value of the

7   Morgan Stanley account when Plaintiff discovered its existence in late January/early February

8   2012.  See id.

9       On June 18, 2012, the superior court issued its ruling on the November OSC.  See Ryden

10  Dec. Ex. C.  The superior court awarded Plaintiff approximately $12,500 in attorney's fees, which

11  was meant to be in the nature of a sanction, pursuant to Family Code § 271.  See id.  The superior

12  court declined to award the additional relief that Plaintiff had requested "based on counsels'

13  representation that those issues had been resolved prior to the hearing."  Id.  The Superior Court

14  did not order Plaintiff to take any steps to implement the Dissolution or QDRO, or mention the

15  possibility of issuing an order like the one that had been raised in Defendant's response.  See id.

16      On June 27, 2012, Defendant removed the OSCC to this Court.  The basis for removal was

17  a federal question based on the preemptive force of the Employment Retirement Income Security

18  Act (29 U.S.C. § 1001 et seq.) ("ERISA").

19      On July 19, 2012, Plaintiff filed a motion to remand.

20      On September 6, 2012, the Magistrate Judge granted Plaintiff's motion and remanded the

21  matter back to the Fresno County Superior Court.

22      On September 20, 2012, Defendant filed a motion to reconsider the Magistrate Judge's

23  remand order.

24      On October 5, 2012, the Court denied the motion to reconsider because remand occurred

25  due to a lack of subject matter jurisdiction, the case had already been received by the Fresno

26  County Superior Court, 28 U.S.C. § 1447(d) prohibits review of such remands, and Defendant had

27  not addressed § 1147(d).

28      On October 12, 2012, Defendant appealed to the Ninth Circuit.

4

On June 8, 2015, the Ninth Circuit held that magistrate judges lack the authority to remand a case.  See Doc. No. 40.  The Ninth Circuit vacated the Magistrate Judge's remand order, and remanded the case back to this Court to either rule on the motion to remand or refer the motion to remand for a Findings and Recommendation.  See id.  The Court now rules on the remand motion.

## **LEGAL FRAMEWORK**

The removal statute (28 U.S.C. § 1441) is strictly construed against removal jurisdiction. Geographic Expeditions, Inc. v. Estate of Lhotka, 599 F.3d 1102, 1107 (9th Cir. 2010); Provincial Gov't of Marinduque v. Placer Dome, Inc., 582 F.3d 1083, 1087 (9th Cir. 2009).  It is presumed that a case lies outside the limited jurisdiction of the federal courts, and the burden of establishing the contrary rests upon the party asserting jurisdiction.  Geographic Expeditions, 599 F.3d at 1106-07; Hunter v. Philip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009).  "The strong presumption against removal jurisdiction" means that "the court resolves all ambiguity in favor of remand to state court."  Hunter, 582 F.3d at 1042; Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). That is, federal jurisdiction over a removed case "must be rejected if there is any doubt as to the right of removal in the first instance."  Geographic Expeditions, 599 F.3d at 1107; Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996).  "If at any time prior to judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c); Gibson v. Chrysler Corp., 261 F.3d 927, 932 (9th Cir. 2001).  Remand under 28 U.S.C. § 1447(c) "is mandatory, not discretionary."  Bruns v. NCUA, 122 F.3d 1251, 1257 (9th Cir. 1997); see California ex. rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (9th Cir. 2004).  That is, the court "must dismiss a case when it determines that it lacks subject matter jurisdiction, whether or not a party has filed a motion."  Page v. City of Southfield, 45 F.3d 128, 133 (6th Cir. 1995).

"The presence or absence of federal question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am., 768 F.3d 938, 947 (9th Cir. 2014); see Hunter, 582 F.3d at 1042.  Under the well-pleaded complaint rule, "a case may not be removed to federal court on the

1   basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated

2   in the plaintiff's complaint, and even if both parties concede that the federal defense is the only

3   question truly at issue." Retail Prop., 768 F.3d at 947; Hunter, 582 F.3d at 1042-43.  However,

4   "[c]omplete preemption removal is an exception to the otherwise applicable rule that a plaintiff is

5   ordinarily entitled to remain in state court so long as its complaint does not, on its face,

6   affirmatively allege a federal claim." Marin Gen. Hosp. v. Modesto & Empire Traction Co., 581

7   F.3d 941, 945 (9th Cir. 2009).  "The 'complete preemption' doctrine applies in select cases where

8   the preemptive force of federal law is so 'extraordinary' that it converts state common law claims

9   into claims arising under federal law for purposes of jurisdiction." K2 Am. Corp. v. Roland Oil &

10  Gas, 653 F.3d 1024, 1029 (9th Cir. 2011).  "Once an area of state law has been completely pre-

11  empted, any claim purportedly based on that pre-empted state law is considered, from its

12  inception, a federal claim, and therefore arises under federal law." Retail Prop., 768 F.3d at 948;

13  K2 Am., 653 F.3d at 1029.  Claims falling under 29 U.S.C. § 1132(a) are completely preempted

14  and considered to be claims that arise under federal law. See Retail Prop., 768 F.3d at 948 & n.5;

15  Marin Gen., 581 F.3d at 945.

16

17                          **PLAINTIFF'S MOTION**[2]

18  **I.      Waiver**

19          *Plaintiff's Argument*

20          Plaintiff argues that the November OSC was filed in order to ascertain the location of her

21  Plan account/funds.  Defendant was deposed and produced records from Morgan Stanley.  This

22  was the first time that she learned the current value and location of the funds.  Defendant raised no

23  jurisdictional objections during the November OSC proceedings.  Moreover, when the Superior

24  Court awarded Plaintiff $12,500 in attorney's fees, Defendant did not argue that ERISA remedies

25  were the only remedies available.  The current OSCC is a continuation of the November OSC.  If

26  all actions taken by Defendant having to do with the Plan were outside the subject matter

27  jurisdiction of the state court, then the Defendant should have removed the November OSC.

28  _____

[2] Arguments made as part of the briefing on Defendant's motion for reconsideration are also included and considered.

1    Instead, Defendant implicitly recognized the authority of the Superior Court to act in this matter.

2    Waiver and/or estoppel should bar Defendant from opposing the motion to remand.

3            *Defendant's Opposition*

4            Defendant argues that he voluntarily complied with the demands in the November OSC by

5    providing Plaintiff with accounting information.  The voluntary compliance in response to the

6    November OSC, which was done before the Superior Court had to make any rulings, does not

7    constitute a clear and unequivocal waiver of the right to remove.  Further, because of voluntary

8    compliance, only attorney's fees remained at issue, and entitlement to attorney's fees is not a basis

9    for removal.  The matter only became removable when Plaintiff filed the OSCC for an alleged

10   breach of fiduciary duty in administering the Plan.

11           *Legal Standard*

12           "A defendant may waive the right to remove to federal court where, after it is apparent that

13   the case is removable, the defendant takes actions in state court that manifest his or her intent to

14   have the matter adjudicated there, and to abandon his or her right to a federal forum."  Chapman v.

15   Deutsche Bank Nat'l Trust Co., 651 F.3d 1039, 1045 n.2 (9th Cir. 2011); Resolution Trust Corp. v.

16   Bayside Developers, 43 F.3d 1230, 1240 (9th Cir. 1994).  "A waiver of the right of removal must

17   be clear and unequivocal," and in general, "the right of removal is not lost by actions in the state

18   court short of proceeding to an adjudication on the merits."  Resolution Trust, 43 F.3d at 1240.

19           *Discussion*

20           Plaintiff has not shown that it was apparent that the November OSC was removable.  The

21   relief requested in the November OSC was an order to force Defendant to segregate and distribute

22   the Plan funds (per the Dissolution and QDRO) and to account for the funds since the QDRO.

23   Plaintiff explained that the November OSC was an attempt to locate her Plan funds.  The

24   November OSC did not attempt to recover for a breach of fiduciary duties or to obtain benefits

25   that were owed under the Plan's terms.  Cf. 29 U.S.C. § 1132(a).  The November OSC reflected an

26   attempt to enforce the 2001 Dissolution and QDRO and to locate the funds of Plaintiff's separate

27   Plan account following the closure of her Millennium account.  Plaintiff cites no authority that a

28   petition to enforce a QDRO's ordered segregation and distribution of assets falls under ERISA

                                            7

1    § 502(a).  Where removal is not apparent, a defendant's actions in state court will not constitute a

2    waiver.  <u>Soliman v. CVS RX Servs.</u>, 570 Fed. Appx. 710, 712 (9th Cir. 2014).

3           Furthermore, it appears that Defendant submitted to a deposition and filed a responsive

4    pleading in which he explained that he had complied with the 2001 Superior Court orders and had

5    voluntarily provided account documentation.  The filing of an answer or a responsive pleading,

6    and engaging in limited discovery (such as participating in limited depositions), are actions that do

7    not constitute waiver.  <u>See</u> <u>Myer v. Nitetrain Coach Co.</u>, 459 F. Supp. 2d 1074, 1080 (W.D. Wash.

8    2006) (depositions); <u>Foley v. Allied Interstate, Inc.</u>, 312 F.Supp.2d 1279, 1282 (C.D. Cal. 2004)

9    (discovery and answer); <u>Acosta v. Direct Merchs. Bank</u>, 207 F.Supp.2d 1129, 1131 (S.D. Cal.

10   2002) (responsive pleadings); <u>Southwest Truck Body Co. v. Collins</u>, 291 F. Supp. 658, 662 (W.D.

11   Mo. 1968) (depositions).

12          Finally, ERISA fiduciaries are obligated to provide an accounting on demand.  <u>See</u>

13   <u>Faircloth v. Lundy Packing Co.</u>, 91 F.3d 648, 656-57 (4th Cir. 1996).  However, Defendant

14   voluntarily provided Plaintiff with an accounting prior to filing his response to the November OSC

15   and prior to the Superior Court issuing any orders.  When Defendant did file his response, he

16   expressly informed the Plaintiff and the Superior Court that he had voluntarily provided an

17   accounting.  Responding that a request has been met does not necessarily indicate an abandonment

18   of a federal forum or a willingness to have the controversy adjudicated; it can be viewed as simply

19   informing the court that a dispute no longer exists.  Plaintiff cites no cases dealing with voluntary

20   compliance of any kind, much less cases with a similar procedural posture as this one.  In the

21   absence of contrary authority, Defendant's voluntary production of accounting documentation is

22   not a "clear and unequivocal" act of waiver.  <u>See</u> <u>Resolution Trust</u>, 43 F.3d at 1240.

23          It is true that Defendant's response to the November OSC indicated a desire that the state

24   court order Plaintiff to comply with the Dissolution and QDRO.  Ryden Dec. Ex. B.  However,

25   this part of the response was in a pre-printed state court form.  <u>See</u> <u>id.</u>  Under the "Other Relief"

26   section of the pre-printed form, there is a box that a respondent can check in order to consent to an

27   order by the Superior Court.  <u>See</u> <u>id.</u>  Defendant checked this box, and described the order to

28   which he consented as: "Petitioner perform all necessary acts to complete the transfer of accounts

into her name pursuant to the judgment of the dissolution and QDRO."  Id.  There is no further

elaboration or discussion of this "consent order" in the remainder of Defendant's response.  See id.

Plaintiff cites no authority that addresses the significance of the "consent order" described in the

pre-printed state court form.

Given the nature of the standardized form and the rest of Defendant's response, it is

unclear to what degree Defendant was actually seeking affirmative relief from the Superior Court.

This is especially so since the Superior Court's June 12, 2012 Order on the November OSC makes

no mention of any relief requested by Defendant.  See Ryden Dec. Ex. C.  Furthermore,

considering that Plaintiff's November OSC requested that Defendant segregate and distribute the

Plan funds per the Dissolution and QDRO, it is arguable that Defendant's request is in the nature

of a compulsory counterclaim.  Cf. Align Tech., Inc. v. Tran, 179 Cal.App.4th 949 (2009)

(discussing compulsory counter complaints under California law in general).  Asserting a

compulsory counterclaim does not waive the right to remove.  See Koch v. Medici Ermete & Figli

S.R.L., 2013 U.S. Dist. LEXIS 65125, *10 (C.D. Cal. May 6, 2013).  Without more from Plaintiff,

the Court cannot hold that Defendant's check-marked "consent order" constitutes a "clear and

unequivocal" waiver of the right to remove.[3]  See Resolution Trust, 43 F.3d at 1240.

In sum, Plaintiff has shown not shown that it was apparent that the November OSC was

removable, and has not identified "clear and unequivocal" conduct by Defendant that constitutes a

waiver of the right to remove.  See id.  Remand on the basis of waiver is not proper.[4]

---

[3] The Court notes that Plaintiff cited no authority of any kind in support of her argument that Defendant waived his right to remove.  Argument that is wholly unsupported by citation to relevant authority generally is unpersuasive.

[4] As part of Plaintiff's reply, Plaintiff argued that Defendant's notice of removal was not made within 30 days of receiving a removable pleading (the November OSC) in violation of 28 U.S.C. § 1446(b)(1).  The Court cannot find that the 30-day limitations issue was properly raised.  Plaintiff raised the § 1446(b)(1) issue for the first time in her reply brief.  Plaintiff's motion to remand focused on the arguments that Defendant was acting as a former spouse and not as an ERISA fiduciary, and that the Defendant waived his right to remove the case based on his actions in state court.  See Doc. No. 8.  Waiver and the 30 day limitation of § 1446(b)(1) are two separate grounds for remanding a matter.  Defendant's opposition addressed the issue of waiver; it did not address § 1446(b)(1).  If Plaintiff believed that Defendant's removal was untimely under § 1446(b)(1), then Plaintiff should have made that argument as part of the motion to remand, not as part of the reply.  Cf. Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").  Also, because a violation of § 1446(b)(1)'s 30-day time limitation is a procedural defect, Plaintiff had 30 days to request remand for violation of that section.  See 28 U.S.C. § 1447(c); Kelton Arms Condo. Owners Ass'n v. Homestead Ins. Co., 346 F.3d 1190, 1192 (9th Cir. 2003).  Plaintiff raised the § 1446(b)(1) 30-day time limitation issue for the first in August 2012, more than 30 days after the notice of removal was filed.  See Doc. Nos. 1, 15.  Because Plaintiff did not properly or timely raise the issue, remand on the basis of a violation of § 1446(b)(1) is improper.  Cf. Kelton Arms, 346 F.3d at 1192.

1  **II.    Prior Exclusive Jurisdiction**

2      *Parties' Arguments* [5]

3      Plaintiff argues that the Dissolution fixed the amount of the community property interests

4  in the Plan, awarded 50% interests to Plaintiff and Defendant, provided for a new and separate

5  account for Plaintiff's interest, and reserved "jurisdiction over any and all issues, regardless of

6  nature, relating to the [Millennium] Pension Account, including, but not limited to, issues which

7  may arise concerning the QDRO to effectuate transfer of the same."  The November OSC was

8  conducted pursuant to this reservation.  The OSCC also falls within the Superior Court's

9  reservation of jurisdiction.  Plaintiff explains that Defendant owes her the amount of money that

10 was in her account at the time he liquidated and transferred the proceeds to the Morgan Stanley

11 account in his name.  Plaintiff states that the OSCC is a request for the Superior Court to restore

12 her community property account.  The OSCC is no different from the original Dissolution

13 provisions, which were intended to secure a separate account for Plaintiff's interest in the Plan.

14     Defendant did not respond to this argument.

15     *Legal Standard*

16     "The doctrine of prior exclusive jurisdiction applies to a federal court's jurisdiction over

17 property only if a state court has previously exercised jurisdiction over that same property and

18 retains that jurisdiction in a separate, concurrent proceeding."  Sexton v. NDEX W., LLC, 713

19 F.3d 533, 537 (9th Cir. 2013).  That is, the doctrine of prior exclusive jurisdiction provides that

20 when one court is exercising *in rem* or *quasi in rem* jurisdiction over a *res*, a second court will not

21 assume *in rem* jurisdiction over the same *res*.  See Chapman v. Deutsche Bank Nat'l Trust Co.,

22 651 F.3d 1039, 1043 (9th Cir. 2011); State Eng'r v. South Fork Band of Te-Moak Tribe of W.

23 Shoshone Indians, 339 F.3d 804, 811 (9th Cir. 2003).  An *in rem* proceeding is one that seeks to

24 "'determine interests in specific property as against the whole world," and a *quasi in rem*

25 proceeding is one in which the "the parties' interests in the property . . . serve as the basis of the

26 jurisdiction . . . ."  Chapman, 651 F.3d at 1044; see Hanson v. Denckla, 357 U.S. 235, 246 n.12

27

28  [5] Plaintiff's argument is made as part of her opposition to reconsideration and is not entirely clear.  Because Plaintiff relies on the Superior Court's express retention of jurisdiction over the Plan as part of the Dissolution and QDRO, the Court takes Plaintiff to be relying on the prior exclusive jurisdiction doctrine.

1  (1958).  Prior exclusive jurisdiction does not apply to concurrent cases involving *in personam*

2  jurisdiction.  Penn General Casualty Co. v. Pennsylvania, 294 U.S. 189, 195 (1935); see also State

3  Eng'r, 339 F.3d at 811.  "When a court exercises *in personam* authority, it addresses a claim for

4  liability, such as one involving a claim for money damages, against a particular party."  In re

5  Johns-Manville Corp., 600 F.3d 135, 153 (2d Cir. 2010).  "An action *in personam* is [one]

6  involving or determining the personal rights and obligations of the parties or is brought against a

7  person rather than property."  United States Bank Nat'l Ass'n v. Martin, 2015 U.S. Dist. LEXIS

8  62815, *18-*20 n.3 (D. Haw. Apr. 23, 2015); see also Hanson, 357 U.S. at 246 n.12; United States

9  v. Jantran, Inc., 782 F.3d 1177, 1180 n.2 (10th Cir. 2015).   The prior exclusive jurisdiction

10  doctrine also does not apply if a defendant removes the single pending state case, and no other

11  parallel state cases exists, because upon removal the federal court's jurisdiction begins and the

12  state court's jurisdiction ends.  Karl v. Quality Loan Serv. Corp., 553 Fed. Appx. 733, 734 (9th

13  Cir. 2014); Sexton, 713 F.3d at 537.  When the prior exclusive jurisdiction doctrine applies,

14  district courts are under a mandatory duty to abstain and may remand, dismiss, or stay the case.

15  See Sexton, 713 F.3d at 536 n.5; Chapman, 651 F.3d at 1044 & n.1.

16      *Discussion*

17      Plaintiff has not adequately shown that the prior exclusive jurisdiction doctrine applies in

18  this case.[6]

19      First, the OSCC is neither an *in rem* nor a *quasi in rem* proceeding.  This is not an action in

20  which the interests in the Plan funds, either between the parties or as to the "whole world," are in

21  issue.  The parties are in agreement that Defendant segregated the Plan funds and created a

22  separate account for Plaintiff at Millennium pursuant to the Dissolution and QDRO.  Furthermore,

23  Defendant makes no claim to the Morgan Stanley account that contains the proceeds of Plaintiff's

24  liquidated Millennium account.  Instead, this is an action by Plaintiff against Defendant personally

25  for breaches of fiduciary duties that were owed to Plaintiff by Defendant.  The relief requested is

26  not an interest in the Plan funds, rather it is for the amount of the decline in value of Plaintiff's

27  separate Plan account from 2007 to 2012.  That is, the OSCC seeks to recover monetary damages

28

---

[6] Plaintiff cites no authority in support of her prior exclusive jurisdiction argument.

11

from Defendant, it does not seek an interest in a *res*.  Because the OSCC is an action for money damages against Defendant personally, rather than against the Plan itself, and for a determination of the rights and obligations between Plaintiff and Defendant, the OSCC is an *in personam* action.  See Jantran, 782 F.3d at 1180 n.2; Johns-Manville, 600 F.3d at 153; Martin, 2015 U.S. Dist. LEXIS 62815 at *18-*20 n.3.  As an *in personam* action, the prior exclusive jurisdiction doctrine does not apply to the OSCC.  See Penn General, 294 U.S. at 195; State Eng'r, 339 F.3d at 811.

Second, Plaintiff has not shown that there is a concurrent on-going state court proceeding.  The Court's understanding is that the OSCC is part of the 2001 divorce case.  To the Court's knowledge, the 2001 divorce case is otherwise inactive.  Once Defendant removed the OSCC, the Superior Court was divested of jurisdiction.  See Karl, 553 Fed. Appx. at 734; Sexton, 713 F.3d at 537.  In the absence of a concurrent state court proceeding, the prior exclusive jurisdiction doctrine does not apply.  See id.

Without more from Plaintiff, the Court cannot conclude that the prior exclusive jurisdiction doctrine applies.  Remand on this basis is inappropriate.

### III.   **ERISA Preemption**

*Plaintiff's Argument*

Plaintiff argues that if her claim against Defendant was one for breach of duty as the Plan trustee, federal jurisdiction would exist.  However, Plaintiff states that her claim is not asserted against Defendant in his capacity as the trustee of the Plan, rather it is a claim of breach of fiduciary duty by Defendant in his capacity as a former spouse with respect to the management and control of Plaintiff's share of the community property interest in the plan.  The fiduciary duty involved derives entirely from the California Family Code.  Plaintiff states that her claim is based on the allegation that Defendant liquidated the Millennium account that he knew belonged to her and reinvested the funds in his own name at a different brokerage, all without telling her.  Defendant's conduct was consistent with his description of the Plan as "self-directed," which he believed meant that "every individual in the plan could direct where their money is invested."  Defendant never made any investment decisions on behalf of any of the other Plan participants, all

1  of whom had invested their Plan interests elsewhere.  This conduct is consistent with Defendant

2  acting as a former spouse breaching Family Code duties and not as an ERISA plan trustee.

3  Defendant's attempts to mischaracterize the fiduciary duties involved and the nature of Plaintiff's

4  claim does not convert the breach of fiduciary duty into one under ERISA.

5       Plaintiff also argues that there is a different standard of care and different damages

6  involved between breach of Family Code fiduciary duties and breach of ERISA plan duties.

7  Family Code § 1101(g) provides for a specific measure of damages, which are different than those

8  provided by ERISA.

9       *Defendant's Opposition*

10       Defendant argues that the OSCC alleges a breach of fiduciary duty in the management and

11  control of Plaintiff's share of the Plan assets.  Plaintiff acknowledges that Defendant is and was

12  the trustee/administrator of the Plan and that she is a participant in the Plan.  Plaintiff seeks

13  damages for an alleged mismanagement of Plan assets by moving the funds to a different

14  investment house without notification and failing to provide Plaintiff with periodic account

15  statements.  However, ERISA sets forth the fiduciary duties that a plan administrator owes to plan

16  beneficiaries.  ERISA is the exclusive means to protect the interest of plan beneficiaries, and thus

17  preempts Plaintiff's state law claims.  Plaintiff's claims relate to an ERISA regulated plan, and

18  Plaintiff cannot artfully plead a family law claim in order to avoid the preemptive effect of

19  ERISA. There is complete preemption in this case because Plaintiff could have originally brought

20  her claims under ERISA § 502 and there is no independent legal duty that is implicated in this

21  case, because ERISA already provides the fiduciary duties owed to plan beneficiaries, provides the

22  information that must be provided to beneficiaries, and provides remedies for a violation.

23       *Legal Standard*

24       There are two strands of ERISA preemption:  preemption under 29 U.S.C. § 1144(a)

25  ("ERISA § 514(a)") and preemption under 29 U.S.C. § 1132(a) ("ERISA § 502(a)").  Fossen v.

26  Blue Cross & Blue Shield of Mont., 660 F.3d 1102, 1107 (9th Cir. 2011); Marin Gen., 581 F.3d at

27  944-45.  Both of these preemption provisions defeat state-law causes of action on the merits.

28  Fossen, 660 F.3d at 1107.

1    Preemption under ERISA § 502(a), however, "confers exclusive federal jurisdiction in

2    certain instances where Congress intended the scope of a federal law to be so broad as to entirely

3    replace any state-law claim." Marin Gen., 581 F.3d at 945.  A state-law cause of action is

4    "completely preempted" by ERISA § 502(a) if: (1) the plaintiff, at some point in time, could have

5    brought the claim under ERISA § 502(a), and (2) where there is no other independent legal duty

6    that is implicated by a defendant's actions.  Fossen, 660 F.3d at 1107-08; Marin Gen., 581 F.3d at

7    946; see Aetna Health Inc. v. Davila, 542 U.S. 200, 210 (2004).  Because this "two-prong test . . .

8    is in the conjunctive, a state-law cause of action is preempted by [ERISA § 502(a)] only if both

9    prongs of the test are satisfied." Fossen, 660 F.3d at 1108; Marin Gen., 581 F.3d at 947.  With

10   respect to the second prong, determining whether an independent duty is involved requires "a

11   practical, rather than a formalistic, analysis because claimants simply cannot obtain relief by

12   dressing up an ERISA benefits claim in the garb of a state law tort." Fossen, 660 F.3d at 1110-11;

13   Cleghorn v. Blue Shield of Cal., 408 F.3d 1222, 1225 (9th Cir. 2005).  Courts are not to "elevate

14   form over substance," and if a state-law cause of action merely duplicates rights and remedies

15   available under ERISA, then that cause of action is completely preempted. See Fossen, 660 F.3d

16   at 1111; see also Davila, 542 U.S. at 206.

17   Preemption under ERISA § 514 occurs generally when a state cause of action "relates to"

18   an ERISA plan.  See Fossen, 660 F.3d at 1108; Marin Gen., 581 F.3d at 945.  Preemption under

19   [ERISA] § 514(a) does not confer subject matter jurisdiction on a federal district court.  Marin

20   Gen., 581 F.3d at 945, 949; Toumajian v. Frailey, 135 F.3d 648, 655 (9th Cir. 1998).  Thus,

21   although a defendant may assert in state court a defense of ERISA § 514 preemption, the

22   defendant cannot rely on ERISA § 514 to establish federal question jurisdiction.  Marin Gen., 581

23   F.3d at 949; see Toumajian, 135 F.3d at 655.

24   *Discussion*

25   Both parties in part have made arguments addressing whether Plaintiff's OSCC claims

26   "relate" to ERISA.  That is not the appropriate inquiry.  Whether a claim "relates" to ERISA is the

27   question for § 514(a) preemption, and § 514(a) preemption is merely a defense that does not

28   confer subject matter jurisdiction.  See Marin Gen., 581 F.3d at 945, 949.  Instead, the key is

14

1    § 502(a) preemption and *Davila*'s two-pronged test.  See Fossen, 660 F.3d at 1107-09; Marin

2    Gen., 581 F.3d at 945-47.  Therefore, the Court will analyze this matter pursuant to *Davila*.

3         a.       First *Davila* Prong

4         The first prong of *Davila* asks whether Plaintiff could have brought a claim under ERISA

5    § 502(a) at some point in time.  The parties do not dispute that the Plan is an ERISA plan.  ERISA

6    § 502(a)(2) and ERISA § 502(a)(3) permit an ERISA plan beneficiary to bring an action for

7    breach of fiduciary duty against an ERISA plan fiduciary.  See 29 U.S.C. §§ 1132(a)(2), (3);

8    Vaughn v. Bay Envl. Mgmt., 567 F.3d 1021, 1028 (9th Cir. 2009); McLeod v. Oregon Lithoprint,

9    102 F.3d 376, 377-78 (9th Cir. 1996).

10        An individual is a plan fiduciary if he *inter alia* "exercises any discretionary authority or

11   discretionary control respecting management of such plan or exercises any authority or control

12   respecting management or disposition of its assets" or "has any discretionary authority or

13   discretionary responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A); see also

14   Varity Corp. v. Howe, 516 U.S. 489, 498 (1996); Johnson v. Couturier, 572 F.3d 1067, 1076 (9th

15   Cir. 2009).  Fiduciary status is construed "liberally, consistent with ERISA's policies and

16   objectives," and therefore extends beyond those who are specifically named in an ERISA plan.

17   Johnson, 572 F.3d at 1076.  Here, the allegations and evidence show that Defendant was a

18   fiduciary of the Plan.  Plaintiff alleges (and Defendant does not dispute) that Defendant is a Plan

19   trustee.  All trustees are fiduciaries.  Joseph Rosenbaum, M.D., Inc. v. Hartford Fire Ins. Co., 104

20   F.3d 258, 262 (9th Cir. 1996).  Furthermore, the evidence indicates that Defendant was able to

21   unilaterally liquidate the Millennium account and reinvest the proceeds in a Morgan Stanley

22   account.  Defendant reinvested the liquidated funds as a trustee of the Plan, which appears to make

23   the account a Plan account.  See Ryden Dec. ¶ 3.  This conduct shows Defendant had the

24   discretion to manage the Plan's assets and administer the Plan.  See 29 U.S.C. § 1002(21)(A);

25   Johnson, 572 F.3d at 1076.  Therefore, Defendant was a fiduciary of the Plan.  See id.

26        The allegations and evidence also show that Plaintiff was a beneficiary of the Plan.

27   Plaintiff obtained a segregated interest in the Plan, in accordance with the Dissolution and QDRO.

28   ERISA provides that a "person who is an alternate payee under a qualified domestic relations

order shall be considered for purposes of any provision of [ERISA] a beneficiary under the plan."
29 U.S.C. § 1056(d)(3)(J); Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan, 555 U.S. 285,
301 (2009); Hamilton v. Wash. State Plumbing & Pipefitting Indus. Pension Plan, 433 F.3d 1091,
1096 (9th Cir. 2006).  In other words, if there is an appropriate qualified domestic relations order,
"an ex-spouse is to be considered an ERISA plan 'beneficiary.'" Stewart v. Thorpe Holding Co.
Profit Sharing Plan, 207 F.3d 1143, 1149 (9th Cir. 2000).  Here, while there are criteria that
ERISA imposes for a state court order to be considered a qualified domestic relations order, see 29
U.S.C. § 1056(d)(3)(C),[7] there is no suggestion that the QDRO in this case does not meet that
criteria.  Cf. Stewart, 207 F.3d at 1149-55 (finding that a marital dissolution order was a valid
qualified domestic relations order).  Once Plaintiff received her separate account within the Plan,
she never moved her account from the Plan.  See Doc. No. 1 at Ex. A at ¶¶ 3, 5.  Through
operation of the QDRO and 29 U.S.C. § 1056(d)(3)(J), and Plaintiff's decision to keep her
segregated account within the Plan, Plaintiff has been an ERISA beneficiary at all relevant times.

Finally, the OSCC seeks recovery from Defendant for "breach of fiduciary duty in the
management and control of [Plaintiff's] pension account in the [Plan]." See Doc. No. 1 Ex. A at
Bates pp. 4-5.  Plaintiff identifies Defendant's liquidation and reinvestment of the entire Plan
without her knowledge and consent, as well as Defendant's failure to provide any statements or
information regarding the Plan from 2001 to 2012.  See id. "ERISA imposes 'a duty of care with
respect to the management of existing trust funds, along with liability for breach of that duty, upon
plan fiduciaries' who administer benefit-plan assets." Pension Benefit Guar. Corp. v. Morgan
Stanley Inv. Mgmt., 712 F.3d 705, 709 (2d Cir. 2013) (quoting Lockheed Corp. v. Spink, 517 U.S.
882, 887 (1996)); see also Fifth Third Bancorp v. Dudenhoeffer, 134 S.Ct. 2459, 2463 (2014)
(ERISA "requires the fiduciary of a pension plan to act prudently in managing the plan's assets.");
Vaughn, 567 F.3d at 1030.  ERISA fiduciaries are also obligated to inter alia provide an
accounting upon request by a beneficiary, see Faircloth, 91 F.3d at 656-57; Libbey-Owens-Ford
Co. v. Blue Cross & Blue Shield Mut., 982 F.2d 1031, 1036 (6th Cir. Ohio 1993), and provide and

---

[7] The Ninth Circuit has rejected a "narrow reading" of § 1056(d)(3)(C), and instead requires that a domestic relations order "substantially comply" with § 1056(d)(3)(C). Hamilton, 433 F.3d at 1097.

disclose information to beneficiaries.  See 29 U.S.C. §§ 1021-1024; Griggs v. E.I. DuPont De

Nemours & Co., 237 F.3d 371, 380-81 (4th Cir. 2001); Barker v. Am. Mobil Power Corp., 64 F.3d

1397, 1403 (9th Cir. 1995); Acosta v. Pacific Enterprises, 950 F.2d 611, 618-19 (9th Cir. 1991).[8]

An ERISA fiduciary is required to discharge his duties "solely in the interest of the participants

and beneficiaries," and "with the care, skill, prudence, and diligence under the circumstances then

prevailing that a prudent man acting in a like capacity and familiar with such matters would use in

the conduct of an enterprise of a like character and with like aims."  29 U.S.C. § 1104(a)(1); In re

Syncor ERISA Litig., 516 F.3d 1095, 1103 (9th Cir. 2008); Acosta, 950 F.2d at 618.  An ERISA

fiduciary who breaches his fiduciary duties is "personally liable to make good to such plan any

losses to the plan resulting from each such breach."  29 U.S.C. § 1109(a); Vaughn, 567 F.3d at

1025.  Given the fiduciary duties imposed by ERISA, Defendant's conduct appears to fit within

§ 502(a)(2) and/or § 502(a)(3).

       In sum, because Plaintiff is an ERISA plan beneficiary and Defendant is an ERISA plan

fiduciary, Plaintiff could have brought suit against Defendant under ERISA § 502(a)(2) or

§ 502(a)(3) for breaching fiduciary duties.  Therefore, the first *Davila* prong is satisfied.

       b.     Second *Davila* Prong

       The Supreme Court has explained that ERISA § 502(a) sets "forth a comprehensive civil

enforcement scheme that represents a careful balancing of the need for prompt and fair claims

settlement procedures against the public interest in encouraging the formation of employee benefit

plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others

under the federal scheme would be completely undermined if ERISA-plan participants and

beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA."

Davila, 542 U.S. at 208-09; Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987); Standard Ins.

Co. v. Morrison, 584 F.3d 837, 846 (9th Cir. 2009).  "[A]ny state-law cause of action that

duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear

---

[8] The Court notes that, in a withdrawn opinion, the Ninth Circuit held, "We hold that a fiduciary's failure to disclose plan documents, as required in §§ 1021-1025, creates fiduciary liability under § 1109(a) -- as well as under the companion provision in § 1104(a) . . . ."  Kuntz v. Reese, 760 F.2d 926, 937 (1985), *withdrawn on other grounds*, 786 F.2d 410 (1986).

1   congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." <u>Davila</u>,

2   542 U.S. at 209; <u>Standard Ins.</u>, 584 F.3d at 846.  Consistent with *Davila* and *Pilot Life*'s rationale,

3   courts have held that state law breach of fiduciary duty causes of action that are based on an

4   ERISA fiduciary's administration or management of an ERISA plan constitute "duplicate,"

5   "supplemental," or "supplanting" causes of action and thus, are preempted under § 1132(a).  <u>See</u>

6   <u>Sharing Plan & Trust v. Estate of Simper</u>, 407 F.3d 1126, 1139 (10th Cir. 2005) ("Regulation of

7   fiduciary duties is also one of the primary subjects of ERISA's civil enforcement scheme, which

8   triggers complete preemption."); <u>Husvar v. Rapoport</u>, 337 F.3d 603, 608 (6th Cir. 2003) ("A claim

9   for breach of fiduciary duty against a fiduciary of an ERISA plan necessarily presents a federal

10  question.  Thus, [a] state-law fiduciary duty claim is not only preempted but also provides federal

11  subject-matter jurisdiction.") (quoting <u>Smith v. Provident Bank</u>, 170 F.3d 609, 614 (6th Cir.

12  1999)); <u>Dudley Supermarket, Inc. v. Transamerica Life Ins. & Annuity Co.</u>, 302 F.3d 1, 3 (1st Cir.

13  2002) ("There can be no doubt that if appellants' purported state law claims in fact charged

14  Transamerica with breach of fiduciary duty while acting as an ERISA fiduciary, ERISA would

15  preempt completely their claims which thus would have to be asserted, if at all, under ERISA.");

16  <u>Polanco-Bezares v. Fiddler Gonzalez & Rodriguez, P.S.C.</u>, 960 F.Supp.2d 340, 346 (D. P.R. 2013)

17  ("Rather, FGR's duties in administering the pension Plan are defined by ERISA. Whether or not

18  FGR complied with its duties, therefore, presents a federal question."); <u>Nagy v. De Wese</u>, 705

19  F.Supp.2d 456, 463 n.8 (E.D. Pa. 2010) ("Although plaintiff does not expressly concede the point,

20  it is clear that ERISA [§ 1132(a)] would preempt this [state law fiduciary duty] claim if Smith

21  Barney is an ERISA fiduciary because, in that event, the claim would conflict directly with an

22  ERISA cause of action."); <u>Toussaint v. JJ Weiser & Co.</u>, 2005 U.S. Dist. LEXIS 2133, *45-*46

23  (S.D.N.Y. Feb. 9, 2005) ("ERISA provides a remedy for the conduct upon which plaintiffs base

24  their state law breach of fiduciary duty claim. In such cases, breach of fiduciary duty with regard

25  to an ERISA-covered employee benefits plan is necessarily an ERISA claim."); <u>Little v. UNUM</u>

26  <u>Provident Corp.</u>, 196 F.Supp.2d 659, 666 (S.D. Ohio 2002) ("A plaintiff may not attach new state-

27  law labels to what are essentially ERISA claims for breach of fiduciary duty and recovery of

28  benefits in an effort to obtain remedies that Congress has chosen not to make available under

1  ERISA."); Cox v. Eichler, 765 F.Supp. 601, 606-07 (N.D.Cal. 1990) ("Because ERISA establishes

2  a standard of care for ERISA fiduciaries (including plan investors and advisors) in section 1104,

3  state law standards of care as applied to the conduct of ERISA fiduciaries are preempted.").

4      Here, Plaintiff argues that Defendant breached his fiduciary duty as a former spouse, not as

5  an ERISA trustee/fiduciary.  Plaintiff seeks a remedy under California Family Code § 1101, and

6  cites and relies on breaches of state law duties found under California Family Code 721(b) and

7  1100.  Family Code § 721 provides that, in transactions between spouses, the spouses are subject

8  to the general rules governing fiduciary relationships, owe each other the duty of highest good

9  faith and fair dealing, and are subject to the same rights and duties as nonmarital business partners.

10  See Cal. Fam. Code § 721(b).  Similarly, Family Code § 1100 provides for joint management of

11  community assets, prohibits certain transactions, and imposes the fiduciary relationship found in

12  § 721 on the spouses.  See Cal. Fam. Code § 1100.  Family Code § 1101 provides a spouse with a

13  claim against the other spouse for a breach of fiduciary duty with respect to community property,

14  and provides for specific remedies, including monetary relief. See Cal. Fam. Code § 1101.

15      The Court is not convinced by Plaintiff's position.  First, ERISA also imposes fiduciary

16  duties.  See 29 U.S.C. § 1104.  The Fifth Circuit has stated that "ERISA's duty of loyalty is the

17  highest known to the law . . . ." Kujanek v. Houston Poly Bag I, Ltd., 658 F.3d 483, 489 (5th Cir.

18  2011).  It is not apparent that the fiduciary duties of Family Code § 721 are greater than those of

19  ERISA § 1104.[9]  Second, and relatedly, although the conduct identified by Plaintiff may implicate

20  the state law duties owed between spouses, Defendant was under substantially the same duties

21  through ERISA.  See 29 U.S.C. §§ 1104, 1021-1024; Dudenhoeffer, 134 S.Ct. at 2463; Pension

22  Benefit, 712 F.3d at 709; Vaughn, 567 F.3d at 1030; Griggs, 237 F.3d at 380-81; Faircloth, 91

23  F.3d at 656-57; Barker, 64 F.3d at 1403; Libbey-Owens-Ford., 982 F.2d at 1036; Acosta, 950 F.2d

24  at 618-19.  ERISA requires prudent management of plan assets and the disclosure of information,

25  including accountings.  See id.  Finally, and critically, the fiduciary duties and breaches alleged by

26  Plaintiff all involve Defendant's administration and management of an ERISA plan.  Plaintiff

27
28  [9] The Court notes that Plaintiff argues that the duty imposed by Family Code § 721 is different and more expansive than the duty imposed by ERISA.  See Doc. No. 8-1 at p.5.  However, Plaintiff cites no authority in support of this assertion.  See id.

1  challenges the way in which Defendant managed the Plan and particularly faults Defendant for

2  failing to keep her informed of the status and location of her Plan account.  Alleging that

3  Defendant acted as a former spouse and not as an ERISA trustee does not change the fact that

4  Defendant is an ERISA trustee and his actions amounted to the administration and/or management

5  of an ERISA plan's assets.[10]  Plaintiff's state law causes of action have the effect of regulating an

6  ERISA fiduciary's actions with respect to an ERISA plan, and provide a remedy that is outside the

7  comprehensive enforcement scheme of ERISA.  Therefore, Plaintiff's state law causes of action

8  constitute an improper "duplicating," "supplementing," or "supplanting" of the exclusive ERISA

9  enforcement scheme; they are not sufficiently independent for purposes of *Davila*.  See Estate of

10  Simper, 407 F.3d at 1139; Husvar, 337 F.3d at 608; Smith, 170 F.3d at 614; Dudley Supermarket,

11  302 F.3d at 3; Polanco-Bezares, 960 F.Supp.2d at 346; Nagy, 705 F.Supp.2d at 463 n.8; Toussaint,

12  2005 U.S. Dist. LEXIS 2133 at *45-*46; Little, 196 F.Supp.2d at 666; Cox, 765 F.Supp. at 606-

13  07.  Therefore, the second prong of *Davila* is met.

14        c.    Conclusion

15        Plaintiff at some point could have brought claims against Defendant under either ERISA §

16  502(a)(2) or § 502(a)(3).  Plaintiff's claims also have the effect of regulating the conduct of an

17  ERISA fiduciary in the administration and management of an ERISA plan, and provide for a

18  remedy outside the exclusive ERISA civil enforcement scheme.  Therefore, Plaintiff's state law

19  causes of action are preempted under ERISA § 502(a).  See Davila, 542 U.S. 208-10; Fossen, 660

20  F.3d at 1107-08; Marin Gen., 581 F.3d at 946.  Because preemption under ERISA § 502(a) has the

21  effect of converting Plaintiff's state law claims into federal claims, this Court has federal question

22  jurisdiction.  Retail Prop., 768 F.3d at 948 & n.5; Marin Gen., 581 F.3d at 945-46.  Plaintiff's

23  motion to remand will be denied.  See id.

24

---

25  [10] Plaintiff has cited deposition excerpts from Defendant in which Defendant states that the Plan accounts were "self-directed," and that Defendant believed that he was transferring only his money from Millennium to Morgan Stanley.

26  However, as discussed above, Defendant is a trustee of the Plan, and the Morgan Stanley account was under the name "Marshal S. Flam, Trustee . . . ."  Thus, a Plan trustee engaged in a transaction that closed and transferred a Plan

27  account into a brokerage account expressly belonging to the trustee, i.e. he managed a Plan account.  Plaintiff cites no authority in support of her argument, and the Court is unaware of any, that an  ERISA fiduciary's subjective belief or

28  intent that he was not acting as an ERISA fiduciary is alone sufficient to take his conduct outside of ERISA §§ 1104, 1109, or 1132.  Without more from Plaintiff, the deposition excerpts do not change the result.

**III.    Previous Motion To Dismiss**

After removal, Defendant filed an answer and a subsequent motion to dismiss.  See Doc. Nos. 7, 18, 19, 20.  In relevant part, the motion to dismiss argued that Plaintiff's state law claims were completely preempted and barred by the applicable statute of limitations (29 U.S.C. § 1113). See id.  Before an opposition was due, the case was remanded to the Fresno County Superior Court.  See Doc. No. 22.  Because the Court has now concluded that it has jurisdiction because Plaintiff's claims are completely preempted, the Court will order Plaintiff to address Defendant's motion to dismiss.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1.    Plaintiff's motion to remand (Doc. No. 8) is DENIED;

2.    Defendant's motion to dismiss (Doc. No. 18) is REINSTATED;

2.    Plaintiff shall file a response/opposition to the reinstated motion to dismiss within fourteen (14) days of service of this order; and

3.    Defendant shall file a reply to Plaintiff's response/opposition within seven (7) days of service of the response/opposition.[11]

IT IS SO ORDERED.

Dated:   March 3, 2016

_____
SENIOR  DISTRICT  JUDGE

---

[11] If, after receiving and reviewing the submissions of the parties, the Court determines that oral argument would be helpful, it will set a hearing on Defendant's motion through a separate order at that time.